1998 ME 264

**TANG OF THE SEA, INC.**

v.

**BAYLEY'S QUALITY SEAFOODS, INC.**

Supreme Judicial Court of Maine.

Argued Dec. 1, 1998.

Decided Dec. 11, 1998.

Joseph J. Hahn (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, attorney for the Plaintiff.

Gene R. Libby (orally), Verrill & Dana, Kennebunk, attorney for the Defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, Justice.

[¶ 1] Bayley's Quality Seafoods, Inc., appeals from the judgment of the Superior Court (Cumberland County, *Brennan, J.*) entered after a jury trial, in favor of Tang of the Sea, Inc., on Tang's claim for conversion. On appeal, Bayley's argues, *inter alia*, that Tang was limited to seeking a formal accounting as to partnership affairs, and thus was precluded from bringing its conversion claim, that there was insufficient evidence to support the jury's award of damages on the conversion claim, and that Tang failed to mitigate its damages. We affirm the judgment.

## I. Background

[¶ 2] Tang of the Sea, Inc., is a Maine corporation owned and operated by Roland Hurtubise, and Bayley's Quality Seafoods, Inc., is a Maine corporation owned and operated by Stanley Bayley. Both Tang and Bayley's process shrimp. The dispute here centers on shrimp processing equipment, which was owned by Tang, and which was, during all relevant times, installed at the Bayley's shrimp processing plant.

[¶ 3] During the late eighties, Tang and Bayley's began to work together in the shrimp processing business, although they never discussed or prepared a formal partnership agreement. To facilitate this arrangement, Tang and Bayley's shared the use of the equipment necessary for their business. Much of the equipment installed at the Bayley's plant was actually owned by Tang. In addition to other equipment, in 1993, Tang and Bayley's each bought a line of Skeemata shrimp processing equipment— each line consisting of a cooker/peeler, a washer, and a meat and shell separator—and both lines were installed at the Bayley's plant.

[¶ 4] In November 1994, Hurtubise and Bayley met with a representative of Seamark Corporation, a distributor of shrimp products, to discuss an arrangement in which Seamark would buy 500,000 pounds of processed shrimp from Tang and Bayley's. Soon thereafter, Bayley met individually with representatives of Capespray, another distributor, and discussed an arrangement in which Capespray would agree to purchase all the shrimp Bayley's could produce. In December, Bayley informed Hurtubise that he had decided to sell the output of Bayley's to Capespray rather than work together with Tang to fill the Seamark order. For a short time, Tang continued to use its equipment at the Bayley's plant to process shrimp for its own sales to other buyers.

[¶ 5] Hurtubise, however, almost immediately became dissatisfied with the new arrangement between Tang and Bayley's, which left Tang with only limited access to its own equipment. By February 1995, Hurtubise asked Bayley to remove Tang's equipment from the Bayley's plant and return it to Tang. Bayley declined to do so. In March, Hurtubise followed his previous oral request with a written request for Tang's equipment. Bayley continued to refuse to return the equipment until the end of the shrimp season, because removing the equipment from his plant any sooner would have been "disruptive" to his business.[1] Without the equipment, Hurtubise closed the Tang of the Sea plant. The equipment was finally returned to Tang after the close of the 1994–1995 shrimp season.

[¶ 6] Tang then brought the instant suit against Bayley's alleging a conversion of Tang's shrimp processing equipment. A jury trial was held, and the jury returned a verdict finding that Bayley's was liable to Tang

---

1. The shrimp season usually runs from December until mid-April.

on Tang's claim for conversion in the amount of $75,000. The Superior Court entered a judgment in accordance with the jury's verdict, and subsequently denied a motion for a new trial filed by Bayley's. Bayley's filed timely notice of appeal.

## II. Remedy

■ [¶ 7] Bayley's first contends that Tang and Bayley's were partners under the Uniform Partnership Act, 31 M.R.S.A. §§ 281–323 (1996 & Supp.1998) (UPA), and that, as such, Tang was limited to the remedy of seeking a formal accounting as to partnership affairs and was not entitled to proceed on its conversion claim. *See* 31 M.R.S.A. § 302 (1996); *Dalton v. Austin*, 432 A.2d 774, 778 (Me.1981). The evidence demonstrates, however, that even if Tang and Bayley's did enter into a partnership agreement, the equipment demanded by Tang was not partnership property. *See* 31 M.R.S.A. § 288(2)(A) (1996) (defining partnership property as "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise,on account of the partnership"). Neither party in this case intended or considered the equipment to be partnership property; in fact, everyone who testified on the issue, including Bayley, acknowledged that the equipment was always known to be the property of Tang. The requirement of a formal accounting is applicable to disputes over partnership property or partnership affairs. *See Dalton v. Austin*, 432 A.2d at 778; 31 M.R.S.A. § 301 (1996). Because neither party disputed the ownership of the property, Tang was free to pursue its claim for conversion.

## III. Damages

■ [¶ 8] Bayley's next contends that there was insufficient evidence to support the jury's award of $75,000 damages on Tang's conversion claim as compensation for lost profits. " 'In order to be recoverable, damages must not be uncertain or speculative but must be grounded on facts in evidence.' " *Williams v. Ubaldo*, 670 A.2d 913, 917 (Me. 1996) (quoting *King v. King*, 507 A.2d 1057, 1059 (Me.1986)). Because "[t]he assessment

of damages is the sole province of the factfinder," we will not disturb the jury's decision unless there is "*no basis* in the evidence for the award." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1081 (Me.1996) (citations omitted) (emphasis added). Therefore, although a jury may not be left to base its decision on mere speculation, " 'damages need not be proved to a mathematical certainty.' " *Williams v. Ubaldo*, 670 A.2d at 917 (quoting *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990)).

■ [¶ 9] Viewed in the light most favorable to Tang, the evidence is sufficient to support the jury's award of damages. The jury heard Tang's evidence as to its damages from Hurtubise who opined that, if the equipment had been returned upon Hurtubise's first demand in February, Tang could have produced and sold to Seamark at least 100,-000 pounds of processed shrimp, at a price that would have generated a profit of at least 75¢ per pound. Specifically, Hurtubise testified that he always calculated the price of processed shrimp sold by Tang to generate a profit of 75¢ to $1 per pound, and that he would have done the same for any processed shrimp that he would have produced in 1995 if Tang's equipment had been returned.

■ [¶ 10] In addition to Hurtubise's testimony, there was evidence that Seamark had purchased shrimp from Tang and Bayley's in the past under similar circumstances, and that Seamark would "absolutely" have purchased up to 500,000 pounds of shrimp from Tang in 1995 if it was able. Although Bayley's challenges the lack of precision and detail in Hurtubise's explanation of the profit-per-pound figure of 75¢ to $1, "[t]he jury is entitled to act upon probable and inferential ... proof in determining damages," and may base an award of damages on a judgmental approximation, "provided the evidence establishes facts from which the amount of damages may be determined to a probability." *Currier v. Cyr*, 570 A.2d at 1210.

[¶ 11] Moreover, while Bayley's expert disputed the profit-per-pound estimate advanced by Hurtubise, the jury was not required to believe his testimony.[2] The jury

**2.** *See McCain Foods, Inc. v. Gervais*, 657 A.2d   782, 783 (Me.1995) ("We view the evidence in

heard evidence that Hurtubise had substantial experience in the business of selling processed shrimp, that he would set his price at a number that would garner a specific profit-per-pound, that he had done so in the past, that he had a buyer for his product, and that the buyer would have purchased up to 500,-000 pounds of product. Under these circumstances, we will not disturb the jury's determination of damages.

### IV. Mitigation

 [¶ 12] Bayley's also contends that, by choosing to close its plant for the remainder of the season, Tang failed to mitigate its damages. Failure to mitigate damages is an affirmative defense, and therefore Bayley's had the burden of proving that Tang failed to take reasonable steps to mitigate its damages. *See Marchesseault v. Jackson*, 611 A.2d 95, 99 (Me.1992). We will vacate the judgment only if the jury was compelled to find that Tang had failed to mitigate damages. *See Agliato v. Norton*, 632 A.2d 144, 145 (Me.1993).

■ [¶ 13] The record, however, contains evidence that Tang was limited to using its own equipent at night, that to use its equipment it would either have had to leave its shrimp in the hands of the employees of Bayley's or hire its own new employees, and that, although it had access to some replacement equipment owned by Bayley's, it would have had to modify that equipment to install it at the Tang plant. Under these circumstances, the jury was not compelled to find

that Tang had failed to take reasonable steps to mitigate its damages. Bayley's simply failed to persuade the jury that Tang had not satisfied its " 'duty' to use reasonable efforts to mitigate its damages." *Marchesseault v. Jackson*, 611 A.2d at 99 (footnote omitted).

[¶ 14] Bayley's other arguments on appeal are without merit.

The entry is

Judgment affirmed.

---

the light most favorable to the nonmoving party, and we defer to the jury on issues of credibility.").

