2001 ME 99

**STATE of Maine**

v.

**Souen KIM.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 29, 2001.

Decided: June 29, 2001.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

James R. Bushell, Esq., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Souen Kim appeals from a judgment entered in the Superior Court (Cum-

berland County, *Fritzsche, J.*) pursuant to a jury verdict finding him guilty of robbery and burglary. Kim contends that the court (1) abused its discretion in refusing to allow testimony about a witness's reputation for truthfulness, and (2) erred in refusing to give a proposed alibi instruction. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In the early morning of March 31, 1999, four men, armed and wearing masks, entered Thang Sumvan's apartment in Portland and took money, wallets, jewelry, ATM cards, cell phones, and jackets from a group of people who were playing cards in Sumvan's living room. Three men[1] were charged with robbery and burglary: Souen Kim, Samol Pich,[2] and Ros Choun.[3] Pich and Kim were tried together. During the trial and again at the close of the evidence, Kim requested an alibi instruction, but the court denied the motion. The jury found Kim guilty of both robbery and burglary. The court sentenced Kim to nineteen years in jail with all but fourteen years suspended, followed by a six-year period of probation. This appeal followed. Kim alleges two errors on the part of the trial court: first, that the court erred in excluding the reputation testimony offered by a witness for Kim, and second, that the court erred when it declined to give the jury an alibi instruction.

## II. DISCUSSION

A. Reputation Evidence

[¶ 3] Among the witnesses testifying for the State was David McClure, who was seventeen years old at the time of the trial and who had been living with Kim's parents at the time of the alleged robbery. McClure testified that on several occasions prior to March 31, 1999, he had overheard Kim and Choun planning the robbery of a gambling house; that he had been recruited to participate in the robbery, but declined the offer; that on March 31, 1999, he and Vouen Kim (Kim's brother) went to a residence in Lowell, Massachusetts, where they met up with Souen Kim, Choun, and Pich; that he saw Vouen Kim with large amounts of money and jewelry after the robbery; and that Souen Kim was talking about the robbery, money, and jewelry later in the day on March 31, 1999.

[¶ 4] In an effort to cast doubt upon McClure's veracity, Kim intended to present the testimony of Kathy Condon, who was prepared to testify about McClure's reputation for untruthfulness. The court appropriately held a voir dire hearing, during which Condon testified that she and three other people in the community viewed McClure as being untrustworthy and someone who says outlandish things that do not make sense and could not possibly be true and who stretches the truth. After initially deciding that Condon's testimony should be admitted, the court eventually excluded her testimony. The court stated its reasons as follows: "[T]here is simply not a whole lot of people who the witness can say share her view.... [I]t does seem it has to be more than a few people and since this is really two or three people, the state's persistence has convinced me that my initial conclusion

---

1. The fourth man had not been charged as of the receipt of the parties' briefs.

2. Pich is a resident of Georgia.

3. Choun is a resident of Georgia. Choun, who, by the time of trial, was in the Clayton County Jail in Georgia where he was being held on a different armed robbery charge and for violating his probation, admitted that he had participated in the robbery along with Souen Kim, Samol Pich, and Vouen Kim.

was wrong and I will [exclude] the testimony."

[¶5] Contrary to Kim's contentions, the court did not exceed the bounds of its discretion in prohibiting Condon from testifying because the requisite foundation of community had not been sufficiently established. *See State v. Ricker,* 2001 ME 76, ¶8, 770 A.2d 1021, 1024; *State v. Mazerolle,* 614 A.2d 68, 73 (Me.1992). The proffered testimony in this case was that four individuals in McClure's neighborhood believed that McClure tended to exaggerate and tell "stories." There was evidence before the court, however, that McClure was known by a relatively large community: he was seventeen years old at the time of the trial; he had attended two high schools in Portland; he had lived with the Kim family; and he had been working for a number of years. Thus, the court did not abuse its discretion when it concluded that the requisite foundation of community had not been established.

### B. Request for Alibi Instruction

[¶6] Kim also offered evidence that he was not present at the scene of the alleged robbery. Ra Meas testified that on the evening of March 30, 1999, he picked Kim up in Portland and drove him to Meas's home in Joffrey, New Hampshire. Meas testified that they arrived at his house at 10:00 P.M. on that same night, and that Kim remained at Meas's house for half an hour before heading off to look for his ex-girlfriend downtown. Meas testified that

Kim returned to Meas's house at approximately 12:00 A.M. on March 31, 1999, and that Kim slept in his son's room. Meas also testified that when he woke up around 7:00 A.M. that morning, Kim was there. Later that morning, Meas drove Kim to an Asian plaza in Lowell, Massachusetts.

 [¶7] At the close of trial, Kim requested a jury instruction on his alibi defense. The court declined to give the alibi instruction requested by Kim. We review the denial of a request for a jury instruction for prejudicial error. *State v. Lemieux,* 2001 ME 46, ¶2, 767 A.2d 295, 296. Jury instructions are reviewed in their entirety to determine whether they fairly and correctly apprised the jury in all necessary respects of the governing law. *State v. Daniels,* 663 A.2d 33, 36 (Me. 1995).

 [¶8] Kim argues that we should adopt the approach of many federal courts and require a specific instruction when a defendant presents evidence that he was not present at the scene of the crime.[4] We have never required a judge to give an alibi instruction, and we decline to do so now. Because traditional alibi instructions are in the nature of a comment by the court on the evidence, such instructions are neither required nor appropriate in most instances. *See* 14 M.R.S.A. § 1105 (1980); *State v. Edwards,* 458 A.2d 422, 424–25 (Me.1983); *State v. Caron,* 382 A.2d 1390, 1390 (Me.1978); Alexander, *Maine Jury Instruction Manual* § 5–5 (3d ed.1999) (hereinafter Alexander).

---

4. *See, e.g., Duckett v. Godinez,* 67 F.3d 734, 745 (9th Cir.1995); *United States v. Alston,* 551 F.2d 315, 319 (D.C.Cir.1976); *United States v. Burse,* 531 F.2d 1151, 1153 (2d Cir. 1976); *United States v. Booz,* 451 F.2d 719, 723–24 (3d Cir.1971); *see also United States v. Fortes,* 619 F.2d 108, 123 (1st Cir.1980) (holding that although it has not adopted a per se rule regarding alibi instructions, in some cases it may be important for the court, upon request, to give suitable alibi instructions that indicate that the burden of proof remains with the government despite disbelief of the alibi witnesses). *But see Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 5.01 cmt. (1998) ("A defendant is entitled to a special instruction that on the issue of alibi a reasonable doubt is sufficient to acquit.") (citations omitted).

 [¶ 9] Alibi evidence is simply evidence that is inconsistent with the defendant's actual or constructive presence at the time and place of the commission of the crime. It is "one method of negating the [State's] case." *State v. Jewell*, 285 A.2d 847, 850 (Me.1972).[5] If it is sufficient to cast doubt on other evidence of the defendant's presence, alibi evidence may prevent the State from meeting its burden on an element of the crime.[6] As with any such evidence, no separate jury instruction is necessary. The burden of proof remains with the State to prove beyond a reasonable doubt that the defendant was the perpetrator of the crime, participating at the time and place of its commission. In other words, the State bears the burden of proving each element of the charge beyond a reasonable doubt, and the court must instruct the jury on the elements of the crime and the State's burden of proof. *State v. Griffin*, 487 A.2d 247, 249 (Me. 1984). *But see Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The State is not, however, required to affirmatively disprove each alternative explanation of the events raised by the defense. *State v. Hernandez*, 1998 ME 73, ¶ 7, 708 A.2d 1022, 1025; *State v. Libby*, 546 A.2d 444, 450 (Me.1988); Alexander at § 6–7 cmt. (3d ed.2000).

[¶ 10] Here, the trial court properly instructed the jury on the elements of the crimes and the State's burden of proof and did not place any burden on the defendant to prove that he was not present at the time and place of the crime. The court did not err in declining to give an alibi instruction.

The entry is:

Judgment affirmed.

---

**5.** Any suggestion that the defendant carries the burden of proof on an alibi defense would be error. *State v. Jewell*, 285 A.2d 847, 849 (Me.1972).

**6.** Thus, alibi evidence is distinct from evidence regarding statutory defenses by which the criminal act is justified, excused, or otherwise declared noncriminal. In those circumstances, the fact-finder must first determine whether the State has met its burden on each element of the alleged crime. Only if it concludes that the burden has been met is it required to consider the defense. *See, e.g., State v. Berube*, 669 A.2d 170, 172 (Me.1995) (holding that a partial statutory defense to vehicular homicide is considered by the fact-finder only after the fact-finder determines that the State has proved beyond a reasonable doubt that the defendant is guilty of manslaughter).