2003 ME 78

**Gaston C.S. LEE**

v.

**SCOTIA PRINCE CRUISES LTD.**

Supreme Judicial Court of Maine.

Argued: May 13, 2003.
Decided: June 17, 2003.

Seth W. Brewster (orally), Verrill & Dana, L.L.P., Portland, for plaintiff.

Peter Bennett (orally), Frederick B. Finberg, The Bennett Law Firm, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Scotia Prince Cruises Limited (Scotia) appeals from a judgment entered in favor of Gaston C.S. Lee on all counts after a jury trial in the Superior Court (Cumberland County, *Crowley, J.*). Lee brought an action for breach of an employment contract against Scotia. Scotia counterclaimed for negligence, breach of fiduciary duty and breach of contract. Scotia argues that the court: (1) should not have submitted the issue of waiver of its counterclaims to the jury, and the jury erroneously determined that Scotia's counterclaims were barred; (2) abused its discretion by denying Scotia's motion to amend its answer and counterclaims; (3) erred in several pretrial and trial rulings; and (4) erred in awarding Lee attorney fees and costs. Lee cross-appeals claiming that the Superior Court erred in denying his motion for judgment as a matter of law on the amount of his damages. We affirm the judgment of the Superior Court.

I. BACKGROUND

[¶ 2] Scotia, formerly known as Prince of Fundy Cruises Limited, owns and operates the Scotia Prince ferry that sails between Portland and Nova Scotia. Prince of Fundy Cruises was owned by Baron Stig Leuhusen until his death in 1996. Lee began working for Prince of Fundy Cruises and its predecessor corporations in 1970, and he was promoted to progressively more responsible positions. After Leuhusen's death, his heirs appointed Lee to be vice president and chief financial officer.

[¶ 3] In 1997, Lee entered into an employment agreement that secured Lee's position as vice president and CFO of Prince of Fundy Cruises until December 31, 2002, or until the company was sold to an unrelated third party. At the same time, Lee entered into a bonus agreement that authorized Lee to receive annual bonuses, at the discretion of the Board, until the expiration of his employment contract. In the event that the company was sold to a third party before December 31, 2002, the agreement provided that the bonuses would become a fixed entitlement of $1.2 million.

[¶ 4] On August 18, 2000, a group of buyers purchased the capital stock of Prince of Fundy Cruises from the Leuhusen estate. Also on that date, Lee entered into a new employment agreement with the new owners. The 2000 employment agreement provided that Lee would be employed by Scotia as vice president and chief financial officer until December 31, 2003. In addition, Scotia was entitled to

terminate Lee only "for cause." The Scotia corporate documents included bylaws waiving Scotia's right to bring claims against its officers and providing for indemnification and attorney fees for such claims, unless the claims arose out of fraud.

[¶ 5] In March 2001, Scotia informed Lee that he was no longer viewed as qualified to do his job. Scotia terminated Lee on April 4, 2001.

[¶ 6] In June 2001, Lee filed an action against Scotia for breach of the 2000 employment agreement. Scotia then filed counterclaims for negligence, breach of fiduciary duty and breach of contract. A year later, after the close of discovery, Scotia filed a motion to amend to add counterclaims and defenses for conversion and fraud. The Superior Court denied the motion.

[¶ 7] After an eight-day trial, the jury returned a verdict in favor of Lee on Lee's breach of contract claim and Scotia's counterclaims. The jury awarded Lee damages, equal to approximately thirty weeks of pay. Lee and Scotia filed motions for judgment as a matter of law. The court denied both motions. The court awarded Lee attorney fees, costs, and expenses. Scotia appealed and Lee cross-appealed from the judgment.

## II. WAIVER

[¶ 8] Scotia contends that the bylaw provision that waives its right to bring any claim against its officers, except those claims arising out of fraud, when interpreted in the context of other bylaw provisions, does not apply to Lee because he was an employee. Lee argues that Scotia waived its counterclaims against Lee because the waiver provision states that it applies to officers and there is no dispute that Lee was an officer. Scotia also contends that the court erred by submitting the issue of

waiver to the jury because it is a question of law. Scotia asserts that the jury erroneously determined that the waiver provision in the company bylaws barred Scotia's counterclaims.

[¶ 9] Whether a contract is ambiguous is a question of law that we review de novo. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993; *Schindler v. Nilsen*, 2001 ME 58, ¶ 15, 770 A.2d 638, 643. If the contract is ambiguous, the interpretation of that contract is a question of fact for the fact-finder. *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d at 993. If the contract is unambiguous, the interpretation of that contract is a question of law. *Id.* "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Id.* (internal quotation marks omitted).

[¶ 10] Because there are reasonable and contradictory interpretations of the bylaw waiver provision, the interpretation of the bylaws is a question of fact that was properly presented to the jury. *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d at 993. The jury's interpretation of Scotia's bylaws are findings of fact that we review for clear error. *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457, 461 ("Construction of an ambiguous contract is a question of fact determined by the fact-finder and reviewed for clear error."); *Titcomb v. Saco Mobile Home Sales, Inc.*, 544 A.2d 754, 757 (Me. 1988) (holding that the trial court properly allowed the jury to resolve ambiguous contractual language).

[¶ 11] Scotia's former chairman of the board testified at trial that although the waiver provision must be read in the context of the other bylaw provisions, he interpreted the waiver provision to mean that the company agreed to waive any

claim with respect to any director or officer. In addition, Lee testified to his understanding that the company could bring an action against Lee only for a breach of the confidentiality and noncompete clause in his 2000 employment agreement. Based upon this testimony and the language of the bylaws, there is competent evidence to support the jury's finding that Scotia's counterclaims were barred by waiver. *Rutland v. Mullen*, 2002 ME 98, ¶ 12, 798 A.2d 1104, 1110 ("We will not overturn a jury verdict unless no reasonable view of the evidence could sustain the verdict .... A jury's verdict is supported by sufficient evidence as long as any competent evidence exists in the record on which the jury could base its findings.") (internal citations and quotation marks omitted); *Titcomb*, 544 A.2d at 757.

## III. PRETRIAL AND TRIAL RULINGS

[¶ 12] Scotia argues that the trial court erred by: (1) denying Scotia's motion to amend to add counterclaims and defenses of conversion and fraud; (2) excluding evidence of Lee's 1997 employment agreement and bonus agreement; (3) imposing time limits for the presentation of evidence at trial and informing the jury that they would have to return the following week if they did not complete their deliberations by mid-day on Friday; (4) denying Scotia's motion for a new trial on its counterclaims; (5) refusing to include Scotia's proposed jury interrogatory; and (6) refusing to instruct the jury on the issue of conversion.

[¶ 13] Several of these claims of error are based on Scotia's argument that it first learned of the facts upon which to base the fraud or conversion claims shortly before filing the motion to amend. However, the trial court could have reasonably concluded that Scotia was aware of these facts for at least six months prior to initiating efforts to amend their pleadings.

[¶ 14] It was within the discretion of the trial court to: (1) refuse to permit Scotia to amend a pleading late in the proceedings, *Butler v. D/Wave Seafood*, 2002 ME 41, ¶ 11, 791 A.2d 928, 931; (2) exclude evidence pursuant to M.R. Evid. 403 and 608, *State v. Robinson*, 2002 ME 136, ¶ 11, 803 A.2d 452, 457; *State v. Poulos*, 1998 ME 43, ¶ 5, 707 A.2d 1307, 1308; (3) manage the trial by setting reasonable time limits on the presentation of evidence and by controlling the timing of jury deliberations, *Dolliver v. Dolliver*, 2001 ME 144, ¶ 10, 782 A.2d 316, 317–18; *Bradford v. Dumond*, 675 A.2d 957, 962–63 (Me.1996); (4) deny the motion for a new trial, *Budzko v. One City Ctr. Assocs.*, 2001 ME 37, ¶ 17, 767 A.2d 310, 315; and (5) frame interrogatories submitted to the jury, *Hansen v. Sunday River Skiway Corp.*, 1999 ME 45, ¶ 13, 726 A.2d 220, 223; *Williams v. Inverness Corp.*, 664 A.2d 1244, 1247 (Me.1995). There is nothing in the record indicating that the trial court exceeded the bounds of its discretion in the foregoing pretrial and trial rulings.

[¶ 15] Scotia also alleges that the trial court erred by refusing to instruct the jury on conversion. We review the denial of a request for a jury instruction for prejudicial error. *State v. Kim*, 2001 ME 99, ¶ 7, 773 A.2d 1051, 1054. "Jury instructions are reviewed in their entirety to determine whether they fairly and correctly apprised the jury in all necessary respects of the governing law." *Id.*

[¶ 16] The court did not abuse its discretion in refusing to allow Scotia to amend the pleadings to include the counterclaim of conversion. At trial, Lee opened the door to evidence about life insurance policies and bank checks. The court then allowed evidence regarding

these transactions for the purposes of establishing Scotia's counterclaim for breach of fiduciary duty and breach of contract. However, the trial court never changed its pretrial ruling excluding the conversion claim, nor did Lee's counsel implicitly consent to Scotia trying conversion as an independent claim. Because conversion was never before the jury as an independent claim, the court properly denied Scotia's request for an instruction on that issue.

## IV. ATTORNEY FEES

[¶ 17] Scotia's corporate bylaws contain several indemnity provisions that collectively indemnify officers for all losses, including reasonable legal costs, incurred in the defense of an action against the officer when that action is adjudged in the officer's favor. Scotia argues that the court erred in awarding Lee the full amount of attorney fees and costs incurred by Lee after Scotia filed its counterclaims. The court found that it was appropriate to award most of the attorney fees and costs incurred after Scotia filed its counterclaims, excepting specific charges related solely to the complaint, the attachment, or undifferentiated fees, because of the manner in which Scotia pursued its counterclaims, and because the issues in the complaint and counterclaim were "inextricably intertwined and coextensive."

[¶ 18] We review the Superior Court's determination of attorney fees for an abuse of discretion. *Villas by the Sea Owners Ass'n v. Garrity*, 2001 ME 93, ¶ 8, 774 A.2d 1115, 1117. The trial court's factual findings with respect to the award of attorney fees will be upheld unless clearly erroneous. *Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 884 (Me.1984).

[¶ 19] In *Baker v. Town of Woolwich*, 517 A.2d 64, 70 (Me.1987), we vacated an award of all requested attorney fees to the Town and reduced the award by half. We held that, as a practical matter, it was "impossible to make an accurate division of the Town's aggregate legal bill" between the Town's action to enforce its residential zoning restriction, which was subject to an attorney fee award pursuant to statutory law, and the defense of Baker's action for a residential zoning exception, which was not subject to an attorney fee award. *Id.* at 69. We adopted an even split "as a fair and equitable resolution of a problem for which there [was] available no better answer." *Id.* at 69–70.

[¶ 20] The trial court deviated from the even split method used in *Baker* because of both the "inextricably intertwined" nature of the complaint and the counterclaim, and the manner in which Scotia prosecuted its counterclaims. The trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees. Considering the special circumstances of the case, which the trial court observed, the court did not abuse its discretion by awarding to Lee the attorney fees and costs incurred after Scotia filed its counterclaims.

## V. DAMAGES

[¶ 21] Lee argues in his cross-appeal that the trial court erred by denying Lee's motion for judgment as a matter of law on damages. The assessment of damages is within the sole province of the jury. We will not disturb that assessment if any reasonable view of the evidence or any inference justifiably drawn from that evidence supports the jury's damage award. *Curran v. Ruffing*, 2002 ME 48, ¶ 7, 792 A.2d 1090, 1093; *Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417, 420. "Reasonableness, not mathematical certainty, is the criteria for determining whether damages were

awarded appropriately." *Down East Energy Corp.*, 1997 ME 148, ¶ 7, 697 A.2d at 420.

[¶ 22] As a general rule, the purpose of an award of compensatory damages for a breach of contract is to place the plaintiff in the same position that he or she would have enjoyed had there been no breach. *Down East Energy Corp. v. RMR, Inc.*, 677 A.2d 1070, 1073 (Me.1996); *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me.1992). An injured party is entitled to recover for all losses actually suffered as a result of the breach. *Marchesseault*, 611 A.2d at 98. A plaintiff has a duty to use reasonable efforts to mitigate his or her damages, but because mitigation is an affirmative defense, the burden is on the defendant to show that the plaintiff failed to take reasonable steps to mitigate damages. *Id.* at 99; *see also Sargent v. Tomhegan Camps Owners Ass'n*, 2000 ME 58, ¶ 10, 749 A.2d 143, 145; *Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc.*, 1998 ME 264, ¶ 12, 721 A.2d 648. The trial court instructed the jury appropriately on the law of mitigation of damages.

[¶ 23] Lee testified at trial that he had made very limited efforts to find employment. Lee indicated that he owned rental property before he was fired and that he managed those properties full-time after his termination. Lee admitted on cross-examination that he had not applied for any job since he was terminated, despite the fact that he had significant skills and experience in financial management. Based on this evidence, the jury could have reasonably concluded that Lee failed to take reasonable steps to mitigate his damages and reduced Lee's damage award accordingly. *See Marchesseault*, 611 A.2d at 99. Therefore, the jury's damage award was not in error.

The entry is:

Judgment affirmed. Remanded to the Superior Court for the determination of Lee's attorney fees and costs of appeal.