STATE OF MAINE                                    SUPERIOR COURT
SAGADAHOC, ss.                                    CIVIL ACTION
                                                  DOCKET NO. BATSC-RE-18-12

SCOTT KIESSLING, PERSONAL        )
REPRESENTATIVE OF THE            )
ESTATES OF E.W. KIESSLING AND    )
EDITH KIESSLING                  )
                                 )
                Plaintiffs,      )              ORDER GRANTING PLAINTIFFS'
                                 )              MOTION FOR SUMMARY
        v.                       )              JUDGMENT ON COUNT I
                                 )
JEFFREY CORBIN                   )
                                 )
                Defendant.       )

This matter is before the Court on Plaintiffs' Motion for Summary Judgment on Count I of their Complaint, Declaratory Judgment.

## Background

The following facts are undisputed unless otherwise noted. Scott Kiessling ("Kiessling" or "Plaintiff") is the Personal Representative of the estates of E.W. Kiessling and Edith Kiessling. Plaintiffs' Statement of Material Facts ¶ 1 ("PSMF"). The estates hold title to two parcels of land in Georgetown, Maine. PSMF ¶ 2. The two parcels are Lot 33, which is .22 acres and Lot 33A, which is .11 acres. PSMF ¶ 3, Defendant's Statement of Additional Material Facts ¶¶ 2-3 ("DSAMF"). Jeffrey Corbin ("Corbin" or "Defendant") and Kiessling signed an Option Agreement for Purchase and Sale of Real Estate ("Option Agreement") regarding the lots on October 12, 2016. PSMF ¶ 5. The relevant portion of the Option Agreement is as follows:

> **4. EXERCISE OF OPTION/PURCHASE PRICE.** The Buyer [Corbin] shall have the right to exercise the Option during the Option Period . . . by providing written notice to Seller [Kiessling]. During the Option Period, the Seller hereby agrees to negotiate exclusively with the Buyer to determine a mutually agreeable purchase price and terms of payment. The Purchase price will be primarily based upon the results of one or more agreed upon appraisals.

1

PSMF ¶ 5, DSAMF ¶¶ 7-8. The Option Period began on the date the Option Agreement was signed, and was to expire on or before September 30, 2017. PSMF ¶ 5, DSAMF ¶ 6. If Corbin did not exercise the Option during the Option Period, the Option Agreement was automatically voided when it expired on September 30, 2017. PSMF ¶ 5, DSAMF ¶¶ 6, 10.

Kiessling provided Corbin with an appraisal of Lot 33, dated 2015, showing that its market value at that time was $260,000. PSMF ¶ 6. He also provided Corbin with a 2015 Comparative Market Analysis of the same lot that suggested a listing price of $300,000. PSMF ¶ 7. For the 2016-2017 tax year, Lot 33 had been assessed at $433,100, and Lot 33A had been assessed at $15,700, for a combined total of $448,800 for tax assessment purposes. PSMF ¶ 12, DSAMF ¶¶ 12-13. After research, Corbin discovered that both lots lacked legal access.[1] DSAMF ¶ 14. In 2017, during the Option Period, Corbin had two independent appraisers evaluate the two lots with the presumption that they were without legal access. DSAMF ¶ 15. Lot 33 appraised at $25,000 and $21,000, and in both appraisals Lot 33A appraised at $6,000. DSAMF ¶ 16.

On August 30, 2017, Corbin met with Kiessling in person to share his discovery about the lack of legal access to the lots and his appraisals of the lots. DSAMF ¶ 17. Kiessling claims that Corbin offered him $31,000 for the lots, while Corbin denies that an offer was made. PSMF ¶ 13, DSAMF ¶ 18. Corbin requested additional information from Kiessling about what he had invested in the lots in terms of taxes, attorney fees, and appraisals, but this information was not provided to Corbin. DSAMF ¶¶ 18-20.

---

[1] Whether the lots have legal access is a disputed fact. Kiessling contends that this "is a complex question of law and the Plaintiff's [sic] deeds and history of use support the claim that there is access." Plaintiffs' Reply SMF ¶ 14. However, as will be discussed later in this Order, it is not a material fact.

2

Near the end of the Option Period, on September 12, 2017, Corbin's attorney sent a letter to Kiessling's attorney stating that Corbin was formally exercising the Option. DSAMF ¶ 22. Corbin requested additional information about legal access to the lots. The parties dispute whether Kiessling adequately addressed or responded to Corbin's requests. DSAMF ¶ 23, 25-27. Corbin claims that the lots do not have legal access and therefore the appraisals that Kiessling provided to him are "baseless and unreasonable." DSAMF ¶ 28. Kiessling denies this, and states that the matter of legal access is for a court to decide. PRSMF ¶ 28.

The parties did not agree to a sales price or an appraisal for the lots before the Option expired. PSMF ¶¶ 16-17. During the Option Period, Kiessling did not negotiate the sale of the lots with anyone else. PSMF ¶ 19. On September 28, 2017, Corbin's attorney recorded an Affidavit in the Sagadahoc County Registry of Deeds stating that Corbin "now has the unconditional right to purchase the Property." PSMF ¶ 20. On April 2, 2018, Kiessling demanded that Corbin file a release of the claims in the Registry of Deeds, but Corbin has not done so. PSMF ¶¶ 22-23.

On August 24, 2018, Plaintiffs filed a two-count Complaint in Superior Court. Count I requests Declaratory Judgment that the Option Agreement has expired and Corbin has no rights in the lots, and a Judgment that requires Corbin to record a release of rights to the lots in the Registry of Deeds. Count II alleges Slander of Title. On November 14, 2018, Plaintiffs filed the instant Motion for Summary Judgment regarding Count I of the Complaint.

## Standard of Review

Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

3

of law.  M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted).  A fact is material if "it has the potential to affect the outcome of the suit." *Id.*  "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.*  When the party moving for summary judgment bears the burden on a claim or defense, the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015.  If the motion for summary judgment is properly supported, then the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment.  M.R. Civ. P. 56(e).

## Discussion

The Option Agreement in this case is an option contract. A land sale option contract is solely an "irrevocable and continuing offer to sell." *DiPietro v. Boynton*, 628 A.2d 1019, 1023 (Me. 1993) (quoting *Shaughnessy v. Eidsmo*, 23 N.W.2d 362, 365 (Minn. 1946). In *DiPietro*, the Law Court applied general contract rules to an option contract. 628 A.2d at 1023. An option does not convey land to the buyer, but gives him a right to buy at his election. *Id.* "At best it is but an irrevocable right or privilege of purchase." *Id.* There is little Maine caselaw that addresses option contracts specifically. The Restatement (second) of Contracts defines an option contract as "a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." § 25 (1981). When confronted with cases involving option contracts in the past, Maine has looked to other states, the Restatement, and other treatises for guidance. *See DiPietro*, 628 A.2d 1019 (Me. 1993).

In their Motion, the Plaintiffs argue that the Option Agreement is unambiguous and ultimately expired on its own terms because the parties were unable to agree on a

4

purchase price, let alone the appraisals that would have been the basis for the purchase price. Plaintiffs additionally argue that Corbin's attempt to exercise the Option is unenforceable because he did not meet the conditions precedent to properly exercise the option. In response, Corbin contends that summary judgment must be denied because there are genuine issues of material fact regarding whether: (1) Kiessling breached the Option Agreement; (2) the lots have legal access and therefore if Kiessling's appraisals were reasonable; and (3) the Option Agreement expired on September 30, 2017. Corbin briefly argues for summary judgment to be denied because he alleges that the Option Agreement is ambiguous and because Kiessling comes to this Court with unclean hands. The arguments are addressed below.

I.     Are the Terms of the Option Agreement Ambiguous?

If contract language is "reasonably susceptible to different interpretations," then it is ambiguous. *Chadwick-BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me. 1993). "Whether the language of a contract is ambiguous is a question of law for the court." *Am. Policyholders' Ins. Co. v. Kyes*, 483 A.2d 337, 340 (Me. 1984). When contract language is unambiguous, its interpretation is a matter of law for the court. *Chadwick-BaRoss*, 627 A.2d at 534. To be unambiguous, "[a] contract need not negate every conceivable construction of its terms." *Id.*

Alternatively, when the language of a contract is ambiguous, "the interpretation of that contract is a question of fact for the fact-finder." *Lee v. Scotia Prince Cruises, Ltd.*, 2003 ME 78, ¶ 9, 828 A.2d 210. In *Lee*, the Law Court determined that because there were "reasonable and contradictory interpretations" of a part of the contract, the interpretation of that part of the contract was "a question of fact that was properly presented to the jury." *Id.* ¶ 10.

5

Here, Corbin contends that the language "one or more agreed upon appraisals" in the Option Agreement is ambiguous because "one party could assume that this would require the parties to have a common understanding of legal access, while another party does not have that understanding." This argument has no weight. By this reasoning, Corbin could make the terms of the Option Agreement ambiguous for nearly any reason at all, so long as he alleges that the parties do not have a common understanding of an underlying issue. Nowhere in the Exercise of Option/Purchase Price paragraph, or in the entire Option Agreement, is access to the land discussed. Instead, Paragraph 6(a) Transfer of Title, of the Option Agreement provides that the

> Seller shall convey the Premises to Buyer at the closing in fee simple, free and clear of liens and encumbrances, subject to the following: (a) <u>Buyer shall have the Option Period to determine if title to the Premises is acceptable</u> and notify Seller of the same after which all objections to the status of title to the Premises are deemed waived . . . .

(emphasis added).

Contrary to Corbin's contention that the language is ambiguous because of the legal access issue, it appears that Paragraph 6(a) of the Option Agreement considered this issue, if indirectly. It is appropriate for this Court to look to that paragraph of the Option Agreement because "when interpreting a contract, a court needs to look at the whole instrument." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 12, 814 A.2d 989. Additionally, a contract does not have to contemplate or "negate every possible construction of its terms" to be unambiguous. *See Waxler v. Waxler*, 458 A.2d 1219, 1223-24 (Me. 1983) (Superior Court did not err in determining that a court ordered weekly payment was <u>not</u> to be credited toward a court ordered lump sum payment owed by a husband to a wife, even though original agreement did not explicitly say that no credit was to be given).

6

Here, viewing the language in the Option Agreement in the light most favorable to Corbin, is unambiguous. It is not "reasonably susceptible to different interpretations," but rather, it means what it says. Because the language in the Option Agreement is clear, this Court will interpret it based on its plain meaning.

## II. Did the Option Agreement Expire on September 30, 2017, Based on the Express Language of the Agreement?

Kiessling argues that two contingencies needed to be met for the Option Agreement to be exercised. First, because the purchase price would be based upon the results of one or more agreed upon appraisals, the parties had to agree on an appraisal before the Option could be exercised. Second, the parties needed to determine a mutually agreeable purchase price based on the aforementioned appraisals. In response, Corbin contends that he formally exercised the Option on September 12, 2017, by letter from his attorney to Kiessling's attorney.

Kiessling's argument has merit. The contract language is unambiguous and Paragraph 4 lays out what is necessary for the option to be exercised. Paragraph 4 is titled "Exercise of Option/Purchase Price." Because these two things, the Option and the purchase price, are combined into one paragraph, it is clear that everything contained within it is necessary to exercise the Option. The contract could have listed "Purchase Price" as a separately labeled Paragraph 5 which would have made it clear that exercise of the Option would have required only a written acceptance, and not a mutually agreed upon purchase price based on agreed upon appraisals. Instead, all the terms required for exercise of the Option are contained in Paragraph 4.

Although Kiessling and Corbin both submitted appraisals to each other, they could not agree on an appraisal. Because no appraisal was agreed upon, no purchase price could be established, which was a necessary condition of exercising the Option.

7

Consequently, because no purchase price was agreed upon, no purchase agreement was entered into before the Option expired on September 30, 2017.[2]

### i. Is There a Genuine Dispute of Material Fact Regarding Whether the Option Agreement Expired on September 30, 2017?

Corbin argues that because the parties disagree regarding whether the Option expired on September 30 that this is a material fact in dispute. He relies on his September 12 letter as a valid exercise of the Option. However, as discussed above, the Option Agreement is unambiguous and required more than a written acceptance to exercise the option. There is no dispute that although both parties submitted appraisals, neither could agree on one. Therefore, no purchase price was agreed to. Corbin does not dispute that Kiessling did not negotiate with anyone else during the Option Period. Because those are the material facts regarding whether the option was exercised before its expiration and none of those facts are disputed, whether the Option expired cannot be in dispute.[3]

Because there are no genuine issues of material fact regarding whether the Option Agreement expired, the Plaintiffs are entitled to judgment as a matter of law pursuant to Maine Rule of Civil Procedure 56(c).

---

[2] Corbin tries to make much of the Option Agreement's provision that "Seller shall be obliged to sell the Property to Buyer upon the terms and conditions set forth herein as if this were a purchase and sale agreement." However, when his attorney wrote to Kiessling's, on September 12 and 21, in both instances he enclosed a separate "Purchase and Sale Agreement." If the Option Agreement truly was the purchase and sale agreement, it would have been unnecessary to send that document again.

[3] Along the same lines, Corbin also alleges a genuine dispute of material fact regarding whether Kiessling breached the Option Agreement. He points to case law explaining that whether a contract has been breached is a question of fact. However, because the Option Agreement is unambiguous, and the relevant facts are undisputed, it is clear that no breach occurred. The parties do not dispute that Kiessling provided Corbin with an appraisal. Corbin just did not agree with the basis of the appraisal.

8

## III. Is Corbin's Purported Exercise of the Option Agreement Unenforceable?

Despite the Option Agreement's expiration, Corbin argues that his letter was sufficient to exercise the Option and force Kiessling to agree to a purchase price. Kiessling disagrees and cites to *MacCormack v. Brower* as a case where an option contract was unenforceable because required contingencies were not met. 2008 ME 86, ¶¶ 2-4, 948 A.2d 1259.

In *MacCormack*, a sale of property was at issue. *Id.* ¶ 2. The plaintiffs signed both a lease and an option contract that provided "in plain language, that [the plaintiffs] received only an option to purchase the property with several contingencies."[4] *Id.* At the hearing, the defendant testified before the District Court that the plaintiffs were four months behind on rent and that they did not always pay on time. *Id.* ¶ 3. The defendant had informed the plaintiffs that he was terminating both the lease and the option contract. *Id.* Six months later, the plaintiffs had not left the property, but the defendant had continued to accept rent. *Id.* ¶ 4. The plaintiffs attempted to exercise the option to purchase the property, but the defendant claimed the option terminated six months prior when he informed the plaintiffs of the same. *Id.*

The District Court (Belfast, *Worth, J.*) made findings that the defendant did not rent or sell the property to the plaintiffs, the plaintiffs were often behind on their rent and violated terms of the lease, and the defendant did not breach the lease because his termination was justified. *Id.* Before the Law Court, the plaintiffs argued for enforcement

---

[4] The case does not specify whether that language was contained in the lease, option contract, or both. It just references that "the documents provide" the contingencies.

of the option contract alleging that they did not breach the lease and because the defendant did not act as if the lease were terminated because he continued to accept rent. *Id.* The Law Court squarely rejected this argument because of the District Court's findings. *Id.* ¶ 4 n.1. The Court held that "[b]ecause the option contract clearly state[d] that the option automatically terminate[d] on termination of the lease" the District Court correctly concluded that the option terminated. *Id.* ¶ 4. Thus, being in compliance with the lease was a condition precedent to exercising the option that the plaintiffs did not satisfy.

In response, Corbin cites to a law review article and the Restatement (second) of Contracts which both explain that an option contract and a land sale contract are two separate contracts. He relies on this to support his argument that he accepted the option contract when he wrote to Kiessling to exercise the Option, even though the parties had not agreed on an appraisal, which was to be the basis for the purchase price.

Kiessling cites to out of state caselaw that conditions precedent to an option contract must be fulfilled before the option ripens into an enforceable contract, and that the terms in option contracts are to be exercised strictly. Additionally, and in accordance with general contract principles that Maine has iterated, he cites to cases explaining that attempts to exercise an option are construed in favor of the optioner, not the optionee. The Restatement provides that "[d]espite equity's dislike of forfeitures, . . . requirements governing the time and manner of exercise of a power of acceptance under an option contract are applied strictly." § 25.

Corbin does not dispute any of this caselaw or offer anything to show that there is a split in how jurisdictions approach option contracts. Maine has often looked to case law outside its jurisdiction and to the Restatement in the past when there has been a dearth of its own precedent to guide its analysis. Both the Restatement and other jurisdictions

10

that have considered option contracts in more depth than Maine have determined that their terms are to be construed strictly, and in favor of the optioner, not the optionee. Here, that would be in favor of Kiessling. To the extent that Maine has confronted contingencies that must be met for an option to be exercised, Maine has approved this notion. Corbin could not exercise the option because there was no agreed upon appraisal and therefore no purchase price was mutually agreed upon. Because of the foregoing, Corbin's attempt to exercise the Option is unenforceable because he did not strictly comply with the necessary terms of exercising the Option.

IV.     **Is Legal Access to the Lots a Material Fact in Dispute that Precludes Summary Judgment?**

Corbin argues that whether the lots have legal access is a genuine dispute of material fact. He additionally argues that whether Kiessling's appraisals based on the lots having legal access are reasonable is a genuine issue of material fact in dispute. Additionally, he requests that this Court determine whether the lots have legal access and supply that term to the Option Agreement.

Corbin is asking this Court to write in terms to the Option Agreement that just do not exist and were not contemplated by the parties. This is different than a court supplying a missing term that was obviously contemplated, but left out, such as a price. When parties contract, it is expected that one party will pay another, or give something of value, for the services or value that they receive according to the contract. Corbin cites to *Pelletier v. Pelletier* as an instance where the court "suppl[ied] a key term from a contract using the standard of reasonableness." 2012 ME 15, ¶ 16, 36 A.3d 903. *Pelletier* involved the dissolution of a corporation. There, the parties had already agreed to the appraised value of the corporation's properties, the division of the properties between them, and

11

that the division was to result in each party receiving equal value, so "it was reasonable for the court to determine and supply the missing price term." *Id.*

In this case, unlike *Pelletier*, the parties have not even agreed on how to appraise the lots because Corbin believes that they have no legal access. Kiessling does not agree with Corbin's assessment of the legal access to the lots. Therefore, whether the lots have legal access is genuinely in dispute. However, the lots' legal access, or lack thereof, has no bearing on whether the Option Agreement has expired and is therefore not a material fact. As discussed prior in Section I of this Order, the purpose of the Option Period, as expressed in Paragraph 6(a), was to allow Corbin time to research the lots and determine whether title was acceptable to him.[5] Because legal access to the lots is not a material fact · regarding whether the Option Agreement expired or was validly exercised, its dispute does not preclude summary judgment in favor of the Plaintiffs.[6]

## Conclusion

It is therefore ORDERED that Plaintiffs' Motion for Summary Judgment on Count I of the Complaint is GRANTED. Plaintiffs are granted Declaratory Judgment that the Option Agreement has expired and Defendant has no rights in the lots at issue in this case.

---

[5] Corbin argues that Kiessling has unclean hands because his counsel has "failed to address the issue of legal access." He additionally alleges that Kiessling's "failure to avail himself of the truth as to the legal access of he is attempting to sell eliminate[s] the possibility of him having clean hands." Instead, from the correspondence between the parties, it seems that Kiessling has not clarified the issue to the extent that Corbin would like. Parties often disagree about what legal conclusions can be drawn from certain facts. Nothing here indicates that Kiessling has falsely or fraudulently guaranteed to Corbin that the lots have legal access, or concealed the fact that the lots may not have that access. Kiessling is not unjustly enriched by this Court finding that the Option expired. Corbin's unclean hands argument as he asserts it against Kiessling has no merit.

[6] Because legal access to the lots is not a material fact, this Court need not address Corbin's argument that Kiessling's appraisals based on the lots having legal access were unreasonable.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: February 12, 2019

Daniel I. Billings, Justice
Maine Superior Court