MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2021 ME 14
Docket:        BCD-20-82
Submitted
  On Briefs:   September 29, 2020
Decided:       March 23, 2021

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.
Majority:      MEAD, GORMAN, JABAR, and HUMPHREY, JJ.
Dissent:       CONNORS and HORTON, JJ.


# H&B REALTY, LLC

v.

# JJ CARS, LLC, et al.

GORMAN, J.

[¶1]   H&B Realty, LLC, appeals from a judgment of the Business and Consumer Docket (*Duddy, J.*) in favor of JJ Cars, LLC, and John Mokarzel on H&B's complaint for breach of contract.  H&B contends that the court erred by applying the affirmative defenses of breach of contract and failure to mitigate damages as pleaded by JJ Cars and Mokarzel.[1]  We affirm the judgment.

---

[1]  We have not specifically held that "breach of contract" is an affirmative defense that must be pleaded as such.  Here, JJ Cars and Mokarzel asserted both in a counterclaim and as a "defense" that H&B's material breach of the contract excused their obligations under the contract.  The trial court agreed.  We have identified failure to mitigate damages as an affirmative defense, *see Tang of the Sea, Inc. v. Bayley's Quality Seafoods*, 1998 ME 264, ¶ 12, 721 A.2d 648, but need not address that issue here.  *See infra* n.4.

## I. BACKGROUND

[¶2]  In its judgment, the court made the following findings of fact, which are supported by competent evidence in the record.  *See Dupuis v. Ellingwood*, 2017 ME 132, ¶ 3, 166 A.3d 112.  H&B and JJ Cars entered into a five-year commercial lease agreement commencing on July 1, 2011, and ending on June 30, 2016, whereby JJ Cars leased a car dealership property in Portland from H&B.  Mokarzel, the sole member of JJ Cars, personally guaranteed the payment of rent and other charges under the lease.  Article XIII of the lease contained the following provision regarding subleasing:

> Lessee will not . . . sub-let . . . the lease premises, without the prior written consent of Lessor in each instance which consent shall not be unreasonably withheld or delayed.  The consent by Lessor to any . . . sub-letting shall be subject to Lessor's reasonable review and approval of subtenant's or sublessee's creditworthiness, business experience, and capacity to perform the Lessee's obligations under this lease. . . .

> Any assignment . . . as to which Lessor has consented . . . shall not be effective or deemed valid unless at the time of such assignment:

> (a) Each . . . sublessee shall agree in a written statement satisfactory to Lessor to assume and abide by all of the terms and provisions of this Lease . . . and

> (b) Each . . . sublessee has submitted a current financial statement . . . and

> (c) Lessee shall pay Lessor an assignment fee . . . . The assignment fee will be . . . ($250.00).

> Lessor shall not be obligated to consent to any proposed . . . subletting if . . . at the time of the proposal . . . Lessee is in material default under any term, covenant or condition of this Lease . . . .

Article XX(a)(iv)(B) of the lease also required that "[u]pon any termination of the Lessee's right to possession only without termination of the Lease: . . . Lessor shall use commercially reasonable efforts to relet the leased premises or any part thereof for such rent and upon such terms as Lessor, in its reasonable discretion, shall determine."

[¶3]  JJ Cars operated a car dealership at the location from July of 2011 until February of 2013.  By February of 2013, JJ Cars was in financial distress, and Mokarzel, the sole member of JJ Cars, decided to close the business and sublet the property.

[¶4]  From February of 2013 until October of 2015, three separate businesses sublet the property from JJ Cars.  Approval for the first and third of these sublets by H&B was provided by its sole member, Sterling Boyington.  As to the second sublet, the court found that "Boyington never objected."  JJ Cars never submitted any of the financial information required by the lease terms for any of these sublets to H&B.

[¶5]  In November of 2015, Wholesale Motors, Inc., owned by Dave McGovern, began occupying the property.  Wholesale Motors wanted to sublet

4

the property and was also interested in extending the lease or purchasing the property. When JJ Cars sought H&B's consent to sublease the property to Wholesale Motors, Boyington refused to give consent on behalf of H&B because he "did not like McGovern." Because H&B refused to approve the sublease, Wholesale Motors vacated the property in November of 2015.

[¶6] After the sublease opportunity with Wholesale Motors ended, the property was unoccupied and JJ Cars stopped paying rent. H&B obtained a forcible entry and detainer judgment against JJ Cars on March 24, 2016, and then sold the property on or about April 7, 2016.

[¶7] Two months after the sale, H&B filed a one-count complaint against JJ Cars and Mokarzel individually, alleging breach of contract and seeking damages for unpaid rent from November of 2015 through April 6, 2016. In their amended answer, JJ Cars and Mokarzel asserted five counterclaims against H&B—alleging breach of contract, fraud, discrimination, failure to mitigate damages, and punitive damages—and eight affirmative defenses, including breach of contract and failure to mitigate damages.[2]

---

[2] Later in the action, JJ Cars and Mokarzel filed a separate action against Boyington. The trial court explained that the separate claims and counterclaims other than that alleging breach of contract were based on assertions that Boyington "harbors racial animus against persons of color[,] harassed and discriminated against JJ Cars' subtenants[,] and caused those subtenants to vacate the premises." Although the trial court found that Boyington had made "bigoted, repulsive, and discriminatory statements," it concluded that JJ Cars failed to establish that Boyington's statements had any effect on its ability to find or keep tenants. The court entered a judgment in favor of H&B on the

[¶8]  The court conducted a jury-waived trial during which Boyington and Mokarzel testified.[3]  In its judgment, the court found that JJ Cars and Mokarzel had breached the lease agreement by failing to pay rent beginning in November of 2015.  The court also found that H&B breached Article XIII of the lease by unreasonably withholding its consent to JJ Cars to sublease to Wholesale Motors.  The court further found that H&B breached its duty to mitigate damages—pursuant to Article XX(a)(iv)(B) of the lease—because it did not take steps to relet the property after JJ Cars began missing rent payments in November of 2015.  Based on these findings, and citing *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1, the court issued a judgment in favor of JJ Cars and Mokarzel on the ground that their breach— failure to pay rent—was excused by H&B's material breaches—unreasonably withholding consent to sublet to Wholesale Motors and failing to mitigate damages.

---

counterclaims of JJ Cars and Mokarzel.  The court also entered a judgment in favor of Boyington on the third-party complaint of JJ Cars and Mokarzel.

 [3]  In this appeal, H&B has not provided a transcript of the testimony of the other trial witnesses. The court's findings are supported by the testimony of Boyington and Mokarzel alone.  *See* M.R. App. P. 5(b)(2)(A) (requiring a party claiming insufficiency of the evidence to provide a transcript of all relevant evidence).

[¶9]  The court denied H&B's subsequent motion for additional and amended findings and to alter or amend the judgment.  *See* M.R. Civ. P. 52(b), 59(e).  H&B timely appeals from the judgment on its complaint.  *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(2)(D).

## II.  DISCUSSION

[¶10]  H&B raises a variety of challenges to the court's finding that it breached the lease by unreasonably withholding consent to Wholesale Motors' proposed sublease.[4]  "Whether a breach of contract has occurred is a finding of fact reviewed for clear error."  *Coastal Ventures v. Alsham Plaza, LLC*, 2010 ME 63, ¶ 20, 1 A.3d 416.  Where, as here, a party's motion for further findings has been denied, we do not infer findings from the evidence in the record.  *See* M.R. Civ. P. 52(b); *Douglas v. Douglas*, 2012 ME 67, ¶ 27, 43 A.3d 965.  Rather, we confine our review to the trial court's explicit findings and determine whether those findings are supported by the record.  *See Ehret v. Ehret,* 2016 ME 43, ¶ 12, 135 A.3d 101.  Although the trial court's judgment must be "supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the

---

[4]  H&B also challenges the court's finding that it breached the contract by failing to mitigate its damages.  Because the court did not err in applying the affirmative defense of breach of contract concerning the subletting issue, we decline to reach the mitigation argument.

parties and any reviewing court of the basis for the decision," *Mooar v. Greenleaf*, 2018 ME 23, ¶ 7, 179 A.3d 307 (quotation marks omitted), "there is no requirement that a court identify the reasoning it uses to reach each finding of fact." *Theberge v. Theberge*, 2010 ME 132, ¶ 18, 9 A.3d 809.

[¶11]   H&B first contends that it reasonably withheld its consent to Wholesale Motors' sublease because JJ Cars did not provide H&B with records or give H&B the opportunity to inquire into Wholesale Motors' creditworthiness, experience, or capacity to perform.  H&B also contends that its refusal to consent to the sublease was a result of Wholesale Motors' request to extend the sublease beyond the four months remaining on the lease and, as such, its refusal was motivated by legitimate commercial business concerns.

[¶12]   Although Boyington testified that those were the reasons he refused to agree to the sublease, the court did not credit those explanations.  Instead, the court relied on Mokarzel's testimony that H&B's reason for withholding consent was Boyington's dislike for McGovern.  Mokarzel testified as to Boyington's distaste for McGovern during direct-examination:

> A: Eventually, I found another person . . . McGovern.  And when I asked . . . [Boyington] to meet with [McGovern], he said I don't like him, I'm not going to meet him.  I'm like, [Boyington], you got to work with me. [Boyington said] I don't like him. . . .  I don't like that guy, I don't like him.  And I'm the one who's do[ing] business with him, and I'm not going to.

8

Mokarzel's testimony continued on cross-examination:

> Q: And you didn't ask [Boyington] for his consent before you subleased to McGovern?
>
> A: I did. He said no, I don't like him. Wouldn't meet.
>
> Q: So, you did not get his written consent, correct?
>
> A: He wouldn't give it. He wouldn't meet with him despite my asking because he "didn't like him."
>
> Q: So . . . he never met with him but he didn't like him, is that your testimony?
>
> A: We met in the parking lot as discussed earlier, and [McGovern] said to [Boyington], I want to extend a longer-term lease. He said no. He wouldn't even talk about a longer-term lease. [McGovern] said, I want to invest money in the property. . . but . . . I can't have a four-month lease. [Boyington] said, I'm not giving you a long lease. Take it up with [Mokarzel]. I'm not doing it.

The court did not—and was not required to—believe Boyington's version of events, nor was it required to credit Boyington as a witness over Mokarzel.[5] *See Guardianship of Gionest,* 2015 ME 154, ¶ 7, 128 A.3d 1062; *see also Roalsvik v. Comack,* 2019 ME 71, ¶ 7, 208 A.3d 367 (explaining that great deference is paid to the fact-finder because it has the first-hand opportunity to see and hear the

---

[5] H&B also argues that the court posited that Boyington acted unreasonably based on the erroneous finding that he refused to ever meet with McGovern. H&B points out that although Mokarzel did claim that Boyington refused to meet him, Mokarzel promptly contradicted himself by agreeing that a meeting took place in November of 2015. Even if the court erred in finding that Boyington never met with McGovern, the error is harmless because the court found—and competent record evidence supports—that H&B refused to lease to Wholesale Motors simply because Boyington did not like McGovern. *See* M.R. Civ. P. 52(c).

witnesses testify). There was competent, substantial evidence to support the trial court's finding that "Boyington did not withhold his consent based on a 'reasonable review' of [Wholesale Motors'] creditworthiness, business experience or capacity to perform JJ Cars' obligation under the lease," but rather that he withheld his consent "simply because [he] did not like McGovern." *See Chapman v. Katz*, 862 N.E.2d 735, 745 (Mass. 2007) (stating that, in a commercial context, when determining whether a refusal to give consent to a tenant's sublease is reasonable, only factors relating "to a landlord's interest in preserving the property or in having the terms of the . . . lease performed should be considered") (quoting Restatement (Second) of Prop.: Landlord and Tenant § 15.2(2) (Am. L. Inst. 1977)). We decline H&B's invitation to re-weigh the evidence on this issue. *See Roalsvik,* 2019 ME 71, ¶ 7, 208 A.3d 367.

[¶13] H&B further argues that it could not consent to the sublease because Wholesale Motors did not agree in a written statement to abide by the terms and provisions of the lease and did not submit a financial statement and a $250 administrative fee. Because leases are contracts in addition to being conveyances of property, ordinary contract principles apply. *See Tondreau v. Sherwin-Williams Co.,* 638 A.2d 728, 730 (Me. 1994). "The interpretation of an unambiguous contract must be determined from the plain meaning of the

10

language used and from the four corners of the instrument without resort to extrinsic evidence." *See Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted). "Where the language of a contract is unambiguous, we review that contract de novo as a question of law." *Williams v. Williams,* 2017 ME 94, ¶ 9, 161 A.3d 710. Contrary to H&B's argument, a plain reading of Article XIII demonstrates that these documents and fees were required only *after* H&B had consented to the lease. *See Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989. Because H&B had already unreasonably withheld consent to the sublease, as a matter of law the opportunity for submitting the necessary documents and fees never arose.

[¶14] H&B next contends that it was not required to consent to the sublease because JJ Cars was in material default, as defined in the lease, for not paying rent at the agreed-upon sum.[6] Contrary to H&B's assertion, the court

---

[6] H&B also makes a glancing reference in a parenthetical to JJ Cars being in material breach of Article XIII for not seeking consent for the three prior subleases. H&B's argument fails to acknowledge or accept the court's finding that Boyington had twice consented to the subleasing of the property and once acquiesced, facts supported by Boyington's testimony that he sanctioned the subleases because "[the sublessees'] money was green." "A material breach of contract is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1 (quotation marks omitted). Given H&B's back-to-back acceptance of three subleases—and the revenue they created—JJ Cars' failure to abide by the technical aspects of the lease with regard to subleasing cannot be seen as a "material" breach of the lease. Further, H&B's argument on this issue ignores our disfavor for restraints on subleases. *See Waterville v. Kelleher,* 127 Me. 32, 35, 141 A. 70, 71 (1928) ("Covenants against subletting are restraints which courts do not favor. They are construed with the utmost jealousy and easy modes have always been countenanced for defeating them."); Cowan & Scannell, *Maine Real Estate Law and Practice* § 15.32 at 684 (2d. ed. 2007).

found that Mokarzel had paid rent as required until October of 2015, a fact supported by Mokarzel's testimony that Boyington consented to him paying a lesser amount of rent.  Again, although there is certainly contradictory evidence in the record, there is ample evidence to support the court's findings that JJ Cars was not in material default of the lease by failing to pay rent.  *See Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101.

[¶15]   H&B also argues that, even if it had unreasonably refused to consent to the sublease in November of 2015, it would not have deprived JJ Cars of any reasonably expected benefit pursuant to the lease because Wholesale Motors continued to occupy the premises and pay rent to JJ Cars.[7]  Again, contrary to H&B's suggestion, the court found that, after November of 2015, the property was unoccupied.   To the extent that H&B challenges the court's findings regarding how long Wholesale Motors occupied the property and paid rent to Mokarzel, those findings are supported by the evidence presented by

---

[7]   The dissent contends that there is no factual finding that connects H&B's refusal to consent to the sublease with Wholesale Motors' departure and JJ Cars' subsequent inability to perform its duties under the lease agreement.  Dissenting Opinion ¶ 26.  We disagree.  The trial court found that, "Boyington refused to approve a sublease for McGovern and McGovern soon vacated the premises," and "[h]ad Boyington provided the reasonable consent required under the Lease Agreement, JJ Cars and Mokarzel would not have been in the position of being unable to pay rent and other charges from November 2015 through April 6, 2016."  Although the second finding was inaccurately labeled as a conclusion of law by the trial court, its label does not change its character for purposes of our review.

12

Mokarzel, the weight and credibility of which was for the trial court alone to assign. *See Guardianship of Gionest*, 2015 ME 154, ¶ 7, 128 A.3d 1062.

[¶16]    Finally, H&B argues that, even if it breached the lease by unreasonably withholding its consent to Wholesale Motors' sublet of the property, it did not rise to the level of a material breach.[8]  "Whether a material breach has occurred is a question of fact that we review for clear error." *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 13, 776 A.2d 1229.  A material breach of contract is a nonperformance of a contractual obligation that excuses the injured party from further performance and justifies the injured party in regarding the whole transaction as at an end.  *Cellar Dwellers*, 2010 ME 32, ¶ 16, 993 A.2d 1

[¶17]    Here, for nearly three years, JJ Cars had been subletting the property in order to ensure that the property generated income to pay the rent owed to H&B.  Boyington was well aware that only by subletting the property

---

[8]   The dissent suggests that the court failed to make a finding that H&B's breach of the lease agreement was material because the term "material" does not appear in the trial court's opinion. Dissenting Opinion ¶ 29.  The trial court, however, explicitly cited to *Cellar Dwellers*, 2010 ME 32, ¶ 16, 993 A.2d 1, in support of its conclusion that "H&B's breach of the Lease Agreement therefore excused JJ Cars and Mokarzel's lack of performance."  Paragraph sixteen of our opinion in *Cellar Dwellers* provides the standard for determining whether a breach of a contract is material and, on the facts of that case, draws the conclusion that "there is competent evidence in the record to support the court's finding that [the appellee] committed a material breach that discharged [the appellant's] duties under the [contract]."  *Id.*   Given the trial court's citation to that paragraph, we are hard-pressed to fault its "failure" to use the word "material" in its decision and conclude that the trial court found that H&B's breach of the lease agreement was material.

had JJ Cars been able to use the property to generate income in order to meet its obligations under the lease. Boyington's breach of his duty to not unreasonably withhold his consent ended any chance JJ Cars had to use the property in a way that would continue to generate income to pay rent. *See Morin Bldg. Prods. Co. v. Atl. Design & Constr. Co.,* 615 A.2d 239, 241 (Me. 1992) (concluding that "[p]revention of performance is a breach of contract that excuses further performance by the non-breaching party"). The trial court did not err in determining that this breach was material.

[¶18] Because there is competent record evidence to support the court's finding that H&B materially breached the lease by refusing to consent to sublet the property to Wholesale Motors, we discern no error in the court's judgment.

The entry is:

Judgment affirmed.

---

CONNORS, J., with whom HORTON, J., joins, dissenting.

[¶19] Not every breach of a contractual duty excuses the other party from its duty to perform. For this reason, I dissent.

14

A.	JJ Cars' First Affirmative Defense:[9] H&B's Refusal to Consent to a Sublease

[¶20]  H&B and JJ Cars entered into a five-year lease commencing in 2011 and ending in 2016.  Over the course of the lease, neither party strictly abided by the terms of the written agreement.  For example, three times prior to the Wholesale Motors sublease, JJ Cars moved a subtenant into the leased premises without seeking H&B's prior consent, contrary to the terms of the lease.  Each time, H&B acquiesced after the fact.

[¶21]  The fourth and last time, with Wholesale Motors, JJ Cars once again moved in its chosen subtenant, this time either before seeking H&B's consent or after ignoring H&B's refusal to consent.

[¶22]  As the Court notes, given our deferential review on appeal, the record supports the trial court's finding that when JJ Cars sought consent to the Wholesale Motors sublease, H&B's owner, Sterling Boyington, refused to

---

[9]  Although we have not held that a breach-of-contract defense must be pleaded affirmatively, *see* Court's Opinion ¶ 1 n.1, any matter "constituting an avoidance" must be set forth as an affirmative defense, M.R. Civ. P. 8(c).  JJ Cars admitted to not paying rent after October 2015 but denied liability by asserting that H&B unreasonably withheld consent.  *See Affirmative Defense, Black's Law Dictionary* (11th ed. 2019) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true"); *see also Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1115 (7th Cir. 1992) (observing that "Illinois regards a plaintiff's breach of contract as an affirmative defense"); *FDIC v. Modular Homes, Inc.*, 859 F. Supp. 117, 122-23 (D.N.J. 1994) (stating that New Jersey recognizes breach of contract as an affirmative defense).  JJ Cars therefore asserted an affirmative defense and bore the burden of proof.  *See Hansen v. Sunday River Skiway Corp.*, 1999 ME 45, ¶ 11 n.2, 726 A.2d 220 ("Generally the party opposing a claim, usually a defendant, has the burden of proof on an issue characterized as an affirmative defense or other issues to avoid or reduce liability.").

consent because he did not like the owner of Wholesale Motors, which was unreasonable and therefore constituted a breach of the lease. Court's Opinion ¶¶ 5, 12. That breach did not relieve JJ Cars of its obligation to pay rent, however, given the disconnect between H&B's breach and JJ Cars' inability to perform its obligations under the lease. It is factually indisputable that Boyington's refusal to consent to Wholesale Motors' subtenancy was simply ignored by all. This fact and the remainder of the record shows no causal connection between Boyington's refusal to consent and JJ Cars' inability to pay rent. Put simply, as a matter of law, H&B's breach was not material.

1. Remedy

[¶23] JJ Cars' sublease to Wholesale Motors in disregard of H&B's refusal to consent was the appropriate and effected remedy by JJ Cars. The Restatement (Second) of Prop.: Landlord and Tenant § 15.2 cmt. g (Am. L. Inst. 1977), provides:

> If the landlord or the tenant withholds unreasonably his consent to a proposed transfer by the other party, the other party may proceed to make the transfer without regard to the terms of the restraint on alienation, because the restraint is valid only to the extent the consent to a transfer is not withheld unreasonably.

Thus, after H&B unreasonably withheld its consent, JJ Cars was free to sublease to Wholesale Motors. *See Polk v. Gibson Prods. Co. of Hattiesburg, Inc.*, 257 So. 2d 225, 230-32 (Miss. 1972) (concluding that the lessees had a right to

16

sublease the premises to preserve the property and mitigate damages after the lessor unduly withheld consent); *Roundup Tavern, Inc. v. Pardini*, 413 P.2d 820, 821-22 (Wash. 1966) (requiring the lessor to acknowledge the subtenant as the rightful lessee after the lessor had unreasonably withheld consent).

[¶24] Critically, *this is exactly what JJ Cars did*. Not only was JJ Cars free to sublease, but it did in fact sublease the premises to Wholesale Motors—just as it had done with the three prior sublessees. JJ Cars took the remedy open to it, leaving no basis to excuse its duty to perform its obligations under the lease.

2.    Lack of a Causal Connection

[¶25] The trial court made no factual finding supported by record evidence that causally connects H&B's breach to JJ Cars' inability to pay rent. There is no evidence that H&B's refusal prevented JJ Cars from subleasing to Wholesale Motors. On the contrary, the record indicates that H&B's refusal to consent was simply ignored. Furthermore, there is no evidence that H&B's refusal to consent caused Wholesale Motors to renege on its sublease[10] or

---

[10]  The only time that the trial court addressed causation was when it found that, although Boyington made "bigoted, repulsive, and discriminatory statements" to JJ Cars' employees, "[t]here was no credible evidence that Boyington made similar comments directed at the subtenants of JJ Cars, or that Boyington caused the subtenants to vacate the premises."

prevented JJ Cars from seeking another subtenant after Wholesale Motors vacated the premises.

[¶26] The Court's opinion states that "[b]ecause H&B refused to approve the sublease, Wholesale Motors vacated the property in November of 2015." Court's Opinion ¶ 5. But there is no such finding by the trial court linking those events, and there is no evidence in the record indicating that H&B's refusal to consent was the reason why Wholesale Motors departed.[11] The owner of JJ Cars, John Mokarzel, testified that he ignored Boyington's refusal to consent and that Wholesale Motors occupied the property until January 2016.[12] Indeed, the evidence shows that during the three months that Wholesale Motors subleased the premises, one of its rent checks to JJ Cars bounced, suggesting that the problem was not H&B's ignored refusal to consent to Wholesale Motors as a subtenant, but rather Wholesale Motors' inability to pay.

---

[11] Because H&B filed a motion for further findings of fact and conclusions of law, "we do not assume that the [trial court] made all the findings necessary to support its judgment." *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 15 n.6, 993 A.2d 1. "Rather, we review the court's findings to determine if they are sufficient, as a matter of law, to support the result and if they are supported by the evidence in the record." *Id.* (quotation marks omitted). The trial court found that Wholesale Motors vacated the premises "soon" after Boyington's refusal, but it made no finding pinpointing the date further or, more importantly, tying Wholesale Motors' departure, whenever it occurred, to H&B's refusal to consent.

[12] Mokarzel testified that, although Wholesale Motors was not actively running its business on H&B's property in December 2015 and January 2016, Wholesale Motors was using the property as an overflow parking lot for its business located next door.

[¶27] The trial court stated in its conclusions of law that "[h]ad Boyington provided the reasonable consent required under the Lease Agreement, JJ Cars and Mokarzel would not have been in the position of being unable to pay rent." But no finding of fact in its decision supports this conclusion either, nor does the record evidence. Despite Wholesale Motors' paying rent to JJ Cars from November 2015 to January 2016, JJ Cars last paid rent to H&B in October 2015.

[¶28] Hence, even accepting that H&B breached the lease by refusing to consent to Wholesale Motors as a subtenant,[13] H&B's breach is insufficient to sustain JJ Cars' affirmative defense given the lack of connection between H&B's refusal and JJ Cars' inability to pay rent.[14]

---

[13] By Mokarzel's own admission, JJ Cars had not paid the full amount of rent owed since year two of the contract, constituting a material breach. Pursuant to Article XIII(c) of the contract, if JJ Cars was in material breach of the contract, then H&B was not obligated to consent to the sublease. Furthermore, Article XXIV(b) of the contract contained an integration clause requiring any changes to be in writing, and Mokarzel testified that the lease was never amended to allow the lesser payment. The Court states that the trial court's finding that JJ Cars had "paid rent as required" for over four years is supported by the record. Court's Opinion ¶ 14. Mokarzel did testify—disputed by Boyington—that Boyington forgave the difference, but there is no factual finding by the trial court on this point, and we cannot fill in the blanks. *See supra* n.2; *see also Ehret v. Ehret*, 2016 ME 43, ¶¶ 12, 15-16, 135 A.3d 101; *Guardianship of Grenier*, 2018 ME 66, ¶¶ 7-8, 11-13, 185 A.3d 728.

[14] Both parties testified that Wholesale Motors not only wanted to lease the property but wanted an extension of the lease period, which H&B refused. It is not clear, but the trial court appeared to include this refusal to extend the lease as a reason why it concluded that H&B's refusal to consent was unreasonable and constituted a breach of the lease. There is support in the record that Wholesale Motors' departure was animated by H&B's refusal to extend the lease, and it is upon this refusal to extend that JJ Cars stopped paying rent. Not only does this testimony further reflect a disconnect between H&B's refusal to consent and JJ Cars' failure to pay rent, but it supports a conclusion that Wholesale Motors' departure was due to H&B's refusal to extend the lease, not its refusal to consent to the sublease. H&B, however, had no contractual duty to agree to a lease

### 3.    Materiality of the Breach

[¶29]   H&B's refusal to consent lacked materiality.   The trial court's opinion tersely states, "H&B's breach of the Lease Agreement therefore excused JJ Cars and Mokarzel's lack of performance."   The term "material" appears nowhere in the trial court's opinion.   But even if we concluded that the trial court implicitly found materiality by citing to *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1, which we should not, *see supra* n.2, no record evidence would support that conclusion.   *See Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 13, 776 A.2d 1229 ("A trial court's factual finding [regarding the materiality of a breach] is clearly erroneous if there is no competent evidence in the record to support it." (quotation marks omitted)).   The trial court's conclusion that JJ Cars was excused from further performance under the contract without finding that H&B's breach was material is an error as a matter of law.

[¶30]   When determining whether a party has committed a material breach, traditional contract principles apply. *Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶ 6, 722 A.2d 1278.   "A material breach of contract is a

---

extension. Hence, to the extent that H&B's refusal to extend the lease formed a part of the trial court's reasoning, it constitutes legal error and is another reason why the affirmative defense fails.

20

non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Cellar Dwellers*, 2010 ME 32, ¶ 16, 993 A.2d 1 (quotation marks omitted). Conversely, a breach by one party that is not material does not justify the other party's subsequent failure to perform under the contract. *See Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d 417. Materiality is a fact-bound determination that should be applied "in such a way as to further the purpose of securing for each party his expectation of an exchange of performances." Restatement (Second) of Conts. § 241 cmt. a (Am. L. Inst. 1981).[15]

[¶31] Here, the record demonstrates, in several ways, that H&B's breach was not material. First, because it ignored H&B's refusal to consent, JJ Cars suffered no detriment or prejudice.[16] *See Coggins*, 1999 ME 12, ¶¶ 6-7, 722 A.2d 1278. Second, JJ Cars was not deprived of the benefit that it reasonably expected—that is, JJ Cars had possession of the property, it leased the property to Wholesale Motors, and it had the ability to lease to another

---

[15] The Restatement (Second) of Conts. § 241 (Am. L. Inst. 1981) provides a set of circumstances that may be considered in determining whether a breach is material. Although the factors listed in section 241 are not intended for leases, *see* Restatement (Second) of Conts. § 231 cmt. e (Am. L. Inst. 1981), they nevertheless provide useful criteria in evaluating landlord-tenant cases, *see, e.g.*, *LR Ranch Co. v. Murnion*, No. DA 14-0103, 2014 Mont. LEXIS 612, at *7 (Mont. Oct. 7, 2014); *DiBella v. Fiumara*, 828 N.E.2d 534, 539-42 & n.7 (Mass. App. Ct. 2005).

[16] The trial court denied JJ Cars' counterclaim against H&B for unreasonably withholding consent because, although H&B breached the lease by doing so, JJ Cars had suffered no damages.

subtenant after Wholesale Motors moved out. *See* Restatement (Second) of Conts. § 241 cmt. b (Am. L. Inst. 1981). Finally, looking at the historical relationship between the parties and their respective failures to strictly adhere to the terms of the contract, the trial court could not have rationally interpreted H&B's withholding of consent to constitute a breach that signaled the end of the contract. *See Brunswick Diggers, Inc. v. Anthony Grace & Sons, Inc.*, 159 Me. 21, 25-26, 187 A.2d 391, 393 (1963).

[¶32] The Court concludes that H&B's breach was material because H&B was aware that JJ Cars was only able to generate income by subletting the property, and, therefore, by withholding consent, H&B "ended any chance JJ Cars had to use the property in a way that would continue to generate income." Court's Opinion ¶ 17. Although "[p]revention of performance is a breach of contract that excuses further performance by the non-breaching party," *Morin Bldg. Prods. Co. v. Atl. Design & Constr. Co.*, 615 A.2d 239, 241 (Me. 1992), as noted above, nothing in the record supports a conclusion that H&B's ignored refusal to consent affected JJ Cars' ability to collect rent from Wholesale Motors or any other viable subtenant.

[¶33] In sum, although the trial court could find on this record that Boyington's rejection of Wholesale Motors based on a general antipathy toward

22

its owner was unreasonable, the facts also reflect that no one paid any attention to this rejection. Given that Boyington's refusal to consent was ignored and that Wholesale Motors moved into the leased premises anyway, and given that Wholesale Motors did not vacate the premises based on this refusal, the lack of connection between H&B's breach and that of JJ Cars is fatal to JJ Cars' affirmative defense. Neither the trial court's factual findings nor the record evidence supports a legal conclusion that JJ Cars met its burden of proof to show that H&B's breach excused JJ Cars from its duty to perform.

B.     JJ Cars' Second Affirmative Defense: Mitigation of Damages

[¶34]   Because I believe that JJ Cars' breach-of-contract affirmative defense fails, I must address the trial court's conclusion on JJ Cars' second affirmative defense—that H&B failed to mitigate its damages. The trial court based its ruling on the conclusion that H&B's duty to mitigate damages arose in November 2015. Pursuant to Article XX(a)(iv) of the lease, however, H&B had no duty to mitigate until JJ Cars' right of possession was terminated, and this did not occur until H&B regained legal possession through a forcible entry and detainer action, after which it swiftly sold the property. *See* M.R. Civ. P. 80D. Given the language of the lease, whether the property was lying dormant for some period before that is immaterial because there is no duty to mitigate

outside the terms of a lease when that lease is commercial. *See* 14 M.R.S. §§ 6010-A, 6017 (2020).

[¶35] The right to possession is determined by a forcible entry and detainer action. *See 20 Thames St. LLC v. Ocean State Job Lot of Me. 2017, LLC,* 2020 ME 55, ¶ 5, 231 A.3d 426 (stating that the forcible entry and detainer process for commercial leases is governed by statute); *Rubin v. Josephson*, 478 A.2d 665, 667 (Me. 1984) (recognizing that a forcible entry and detainer action is "a summary proceeding to determine who has a right to immediate possession of real property to the exclusion of another" and that judicial power in this type of action is "purely statutory in origin").

[¶36] Because the terms of the lease unambiguously state that H&B's duty to mitigate was triggered when JJ Cars' right to possession was terminated, *see Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, and JJ Cars' right of possession was terminated only as of March 24, 2016, at the conclusion of the forcible entry and detainer action, *see Ocean State Job Lot.,* 2020 ME 55, ¶ 5, 231 A.3d 426, the trial court erred when it found that H&B's duty to mitigate arose in November 2015. *See also Dahl v. Comber,* 444 A.2d 392, 393-96 (Me. 1982).

24

## C.    Conclusion

[¶37]  For the foregoing reasons, the judgment should be vacated and the matter remanded for a calculation of H&B's damages arising from JJ Cars' breach.

---

Marshall J. Tinkle, Esq., Thompson, MacColl & Bass, LLC, Portland, for appellant H&B Realty, LLC

Neal L. Weinstein, Esq., Old Orchard Beach, for appellee JJ Cars, LLC, and John Mokarzel

Business and Consumer Docket docket number CV-2016-33
For Clerk Reference Only