MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 20
Docket:       BCD-25-18
Argued:       September 10, 2025
Decided:      February 26, 2026

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

H.A.T., LLC

v.

GREENLEAF APARTMENTS, LLC, et al.

MEAD, J.

[¶1]  H.A.T., LLC, appeals from a judgment entered in the Business and Consumer Docket (*Duddy, J.*).  H.A.T. argues that the court erred in concluding that H.A.T. breached its contract with Greenleaf Apartments, LLC, that H.A.T. was not entitled to insurance proceeds that Greenleaf obtained, and that Greenleaf was not required to send H.A.T. a notice of a right to cure a default. We affirm the judgment.

## I.  BACKGROUND

### A.    Facts

[¶2]  The following facts are drawn from the procedural record and from the trial court's extensive findings of fact, which are supported by competent

evidence in the record.  *See H&B Realty, LLC v. JJ Cars, LLC*, 2021 ME 14, ¶ 2, 246 A.3d 1176.

[¶3]  On January 1, 2008, H.A.T., which is controlled by David O'Donnell, entered into a bond-for-deed agreement titled "Conditional Contract for Sale of Land and Buildings" with Greenleaf, which is controlled by Richard Harris Jr., to pay one million dollars for three buildings in Portland containing fifteen rental units.  Both parties were represented by counsel.  H.A.T. purchased the property as a commercial investment that it managed as a business enterprise. Neither O'Donnell nor H.A.T. ever occupied the property or used the property as a dwelling.

[¶4]  Under the terms of the contract, H.A.T. made a downpayment of $40,000 and gave Greenleaf a promissory note for $970,032, to be paid in monthly installments.  The contract assigned H.A.T. all rights arising from any insurance policy maintained by Greenleaf on the property.  H.A.T. took immediate possession of the property but would not acquire title to the property until the note was fully paid.  H.A.T. gave Greenleaf a mortgage on three of its other properties to secure the note and further assigned to Greenleaf all its rights to the proceeds of any fire or hazard insurance policy covering the property.  Immediately after closing, however, prompted by

Greenleaf's concerns with certain provisions of the contract and with the mortgage securing the note, the parties executed a post-closing agreement to further protect Greenleaf.

[¶5]   On April 6, 2009, prompted by H.A.T.'s request that Greenleaf subordinate to another lender its security interest in one of the properties securing the note, the parties executed a memorandum of agreement that is central to this appeal.   Pursuant to the memorandum of agreement, H.A.T. executed an undated agreement to terminate the contract, which provided that the agreement

> shall be held in escrow by Murray, Plumb & Murray [(MPM) (Greenleaf's counsel)] and may be released by [MPM] for recording upon the happening of any "event of default," including . . . the failure to timely make any payment under [the] Promissory Note . . . .   No notice need be given by Greenleaf to [H.A.T.] prior to release of the Agreement for recording in the event of any default in making timely payments . . . .

[¶6]   Following the execution of the termination agreement, three separate casualty events affecting the buildings—a roof leak, a pipe freeze leading to water damage apparently resulting from a failure to adequately heat the property, and a kitchen fire—necessitated that Greenleaf lend large amounts of money to H.A.T. to fund repairs, substantially increasing H.A.T.'s

4

debt to Greenleaf.[1]  The loans led to H.A.T. signing two more promissory notes, one for $25,000 and another for $155,302.  Some, but not all, of the losses were covered by Greenleaf's insurance; H.A.T. was not aware that Greenleaf received $80,964 from its insurance carrier.

[¶7]  H.A.T. was seriously delinquent under the contract and the larger additional promissory note through November 2015 and beyond.  On November 9, 2015, Greenleaf's counsel wrote to H.A.T.'s counsel requesting that "all of the arrearages [be] cleaned up by year['s] end," or else the parties' relationship would "have to [be] reconsider[ed]."  In H.A.T.'s response, it acknowledged the unpaid debt and admitted that "it is probably not possible for H.A.T. or [O'Donnell] to meet the monthly $12-$13,000 in note obligations."  H.A.T. raised the issue of the existence and amount of insurance coverage in proposing a renegotiation of the debt repayment.

[¶8]  In January 2016, Greenleaf advised H.A.T. that of the $153,965 owed on the notes in 2015, $111,000 had been paid, resulting in a shortfall of just under $43,000.  The letter ended by stating that it "cannot be taken as any waiver of a default; there are numerous continuing defaults outstanding at this point which [Greenleaf] in no way waive[s]."

---

[1]  Greenleaf also lent H.A.T. $30,000 "to catch up on its utility bill."

[¶9]  In May 2016, Greenleaf proposed consolidating all of H.A.T.'s debts into one loan, deducting the amount from the insurance reimbursement received by Harris for the water damage.  That loan would be for $899,779 as of May 1, 2016, with seven percent interest after that.  Greenleaf received no response to this proposal.

[¶10]  On August 26, 2016, MPM, having received evidence from Greenleaf that H.A.T. was in default and had been in default for some time, released from escrow the termination agreement, which Greenleaf then recorded in the registry of deeds.  Greenleaf advised H.A.T. that it would consider a proposal for H.A.T. to sell the property to another buyer if H.A.T. were able to make such a deal and allowed H.A.T. to continue operating the property in some respects with the understanding that the property would be sold.  H.A.T. was unable to find a buyer for the property, and on October 19, 2016, Greenleaf formally ousted H.A.T. from the property.

## B.    Procedural History

[¶11]  On December 23, 2019, H.A.T. filed a complaint against Greenleaf and MPM, which, as later amended, alleged (1) a statutory right of redemption, (2) a claim for deceptive practices or fraud, (3) a claim for promissory or equitable estoppel, (4) a claim for breach of contract, (5) a claim for

6

betterments, (6) a claim of unconscionability, and (7) a request for quantum meruit or other equitable relief.[2]  Greenleaf counterclaimed for breach of contract.

[¶12]  After MPM moved to dismiss the complaint against it pursuant to M.R. Civ. P. 12(b)(6), the case was transferred to the Business and Consumer Docket.  Following a hearing, the court granted the motion and dismissed all claims against MPM.

[¶13]  The court held a bench trial from April 8 to 11, 2024, on the remaining claims against Greenleaf.  The court subsequently entered judgment for Greenleaf on all counts of H.A.T.'s complaint and on the counterclaim, concluding that H.A.T. had payment defaults that entitled Greenleaf to foreclose.  H.A.T. moved for further findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b).  After a hearing, the court granted the motion in part and made further findings of fact and conclusions of law.  It denied H.A.T.'s request to amend the judgment, however, because its additional findings of fact and conclusions of law were unfavorable to H.A.T. and did not change the outcome of the original judgment.

---

[2]  H.A.T. also asserted a claim that a prospective purchaser of the property had breached his contract to buy the property, as well as a claim of unfair trade practices.  These claims were later dismissed by agreement.

[¶14]   The court entered a final judgment on December 30, 2024, awarding Greenleaf $8,281.77 in costs, $386,953.35 in attorney fees, and post-judgment statutory interest.   H.A.T. timely appealed.   *See* M.R. App. P. 2B(c)(2).

## II.  DISCUSSION

### A.    H.A.T. breached the contract with Greenleaf.

[¶15]  H.A.T. contends that the court erred in finding that Greenleaf was justified in recording the termination agreement because H.A.T. had breached the contract.  The court found that there was ample evidence of numerous performance deficits by H.A.T. when it was in possession of the property and that any one of them would justify Greenleaf's election to proceed with foreclosure.

[¶16]  "Whether a breach of contract has occurred is a finding of fact reviewed for clear error."  *H&B Realty, LLC,* 2021 ME 14, ¶ 10, 246 A.3d 1176 (quotation marks omitted).

#### 1.    H.A.T. was in default at the time the termination agreement was filed due to missed payments.

[¶17]   The contract and attached promissory note required H.A.T. to make monthly payments to Greenleaf.  The amount due each month was recalculated throughout the relationship between H.A.T. and Greenleaf to

8

account for H.A.T.'s delinquency and the considerable value of the loans Greenleaf made to H.A.T. Greenleaf terminated the contract with H.A.T. and took back possession of the property in August 2016. At that time, H.A.T. was at least three months behind on payments to Greenleaf. Under paragraph fourteen of the contract, H.A.T.'s failure to make any payment constituted a default. The contract further provided that, in the event of an uncured default, "[the] Agreement shall be terminated pursuant to any means authorized by law and all of [H.A.T.'s] interest in the Property shall be terminated." The 2009 memorandum of agreement creating the termination agreement confirmed the terms of the original contract, stating that the agreement "may be released by [MPM] for recording *upon the happening of any 'event of default,'* including . . . the failure to timely make any payment." (Emphasis added).

[¶18] Concerning H.A.T.'s missed payments, H.A.T.'s second amended complaint concedes that when Greenleaf recorded the termination agreement on August 26, 2016, "[H.A.T.] had not remitted monthly payments due in June, July and August, 2016." O'Donnell's emails and correspondence also reference missed payments. H.A.T., through counsel, further acknowledged that it was

"probably not be possible for H.A.T. or [O'Donnell] to meet the monthly $12-$13,000 in note obligations."[3]

[¶19]   Accordingly, the trial court did not err because there is ample evidence in the record to support its finding that H.A.T. breached the contract by missing required payments, and Greenleaf was therefore permitted to terminate the contract.

## 2.   H.A.T. was not entitled to a credit for the insurance proceeds that Greenleaf received.

[¶20]   Both in the trial court and on appeal, H.A.T.'s chief rebuttal to its clear default is that it was entitled to the insurance proceeds that Greenleaf received after the burst-pipe incident, or to a set-off for the lost rent that resulted from it.[4]   "[W]hether there has been a breach of contract is a question of fact.  We will not set aside the factual findings of the trial court unless they are clearly erroneous." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1080 (Me. 1996) (citation omitted).  H.A.T.'s rebuttal fails for several reasons.

---

[3]  In the summer of 2014, O'Donnell filed a petition for bankruptcy.  The petition further underscores H.A.T.'s inability to make the required payments and address the arrearages.  Although not relied on by Greenleaf or MPM, the filing of a petition for bankruptcy also constituted an independent event of default under the contract.

[4]  H.A.T. offers additional arguments that we find unpersuasive, and we will not discuss them further.

[¶21]  First, on January 1, 2008, H.A.T. transferred to Greenleaf its rights in any fire or hazard insurance policy covering the Property.  The mortgage securing the original promissory note provided: "As further security for payment of the indebtedness and performance of [its] obligations . . . [H.A.T.] hereby transfers, sets over and assigns to [Greenleaf] . . . [a]ll rights in or to the proceeds of any fire and/or hazard insurance policy covering the [p]remises and the improvements thereon." Therefore, the record adequately supports the trial court's finding that Greenleaf had no obligation to include H.A.T. in its negotiations with the insurance companies, to disburse insurance proceeds to H.A.T., or to reimburse H.A.T. for rent lost because of the casualty events.

[¶22]  Second, although paragraph eleven, titled "Insurance," of the bond-for-deed agreement provides that "[Greenleaf] hereby assigns to [H.A.T.] all of [Greenleaf's] rights arising from any insurance policy maintained by [Greenleaf] on the [p]roperty, including all loss proceeds," H.A.T. was not entitled to the benefit of paragraph eleven of the contract because Greenleaf had to step in to make the necessary repairs that H.A.T. could not afford.  As a result, assigning H.A.T. the rights under the insurance policy would provide H.A.T. with an unjust windfall.[5]  This is particularly true given that the expenses

---

[5]  At trial, O'Donnell conceded that Greenleaf was entitled to the insurance proceeds because it paid for the repairs.

related to the burst pipe totaled $176,802.46 while the insurance proceeds totaled only $80,964.

[¶23] Third, there is ample evidence in the record to support the trial court's finding that H.A.T. was not entitled to set off the amount of Greenleaf's insurance recovery against H.A.T.'s debt pursuant to paragraph seventeen of the contract, because that provision (1) required that H.A.T. be "in good standing under [the] [c]ontract" and H.A.T. was not, and (2) was only applicable "[i]n the event that [Greenleaf] defaults in its obligations," and Greenleaf was never in default.

[¶24] Because there is competent record evidence to support the court's finding that H.A.T. was in default due to missed payments, and that H.A.T. was not entitled to the insurance proceeds obtained by Greenleaf, we discern no error in the court's finding that H.A.T. breached the contract.

## B.    Notice was not due under 14 M.R.S. § 6203-F(2).

[¶25] When applicable, 14 M.R.S. § 6203-F(2) (2025) requires a seller to give written notice of a thirty-day right to cure a default to a purchaser before foreclosure of a bond-for-deed contract. H.A.T. asserts that the trial court erred in concluding that the statute did not apply in this case, and that even if it did

apply, the court erred in finding that H.A.T. waived the statute's protections in clear and unmistakable language.[6]

[¶26]  We interpret this statute de novo.  *See Doe v. Burnham*, 2025 ME 33, ¶ 12, 334 A.3d 675.  "If the statute is unambiguous, we will base our interpretation only on the statute's plain language.  If the statute is ambiguous, we will consider other indicia of legislative intent, such as the statute's purpose or its legislative history."  *Id.* (citation omitted).

[¶27]  The statutory notice provision contains a major limitation, namely that it "applies only to contracts for the sale of *residential real estate* located in this State, when the purchaser is in possession of the subject real estate.  All

---

6  The trial court found that H.A.T. clearly and unmistakably waived the protections of section 6203-F.  Although "[c]ourts normally will not infer from a general contractual provision that the parties intended to waive a statutorily protected right," such a waiver is effective when "the undertaking is explicitly stated.  More succinctly, the waiver must be clear and unmistakable." *Dow v. Billing*, 2020 ME 10, ¶ 17, 224 A.3d 244 (emphasis and quotation marks omitted).

Here, H.A.T.'s "explicitly stated" waiver could not be more "clear and unmistakable."  The contract provides:

> (e)  <u>Waiver</u>.  **BY SIGNING HEREUNDER, PURCHASER WAIVES ANY RIGHT IT MAY HAVE TO CONTINUE IN POSSESSION AFTER DEFAULT BY VIRTUE OF TITLE 33 §482 AND/OR TITLE 14 §6203-F OF THE MAINE REVISED STATUTES AND/OR ANY OTHER PROVISION OF LAW, AND SUBMITS, IN THE EVENT OF ITS DEFAULT HEREUNDER, TO FORCIBLE ENTRY AND DETAINER AS SELLER'S SOLE REMEDY FOR RECOVERING POSSESSION OF THE PROPERTY.**  Purchaser shall not have any claim to equity or improvements on the Property.

Despite the parties' apparent intention that they would not be bound by section 6203-F, the language of the statute suggests that the notice provision applies to all contracts and may not be waived.  *See* 14 M.R.S. § 6203-F.  As a result, we address the argument as if there was no waiver.

other transactions are governed by the terms of the contract and applicable law." 14 M.R.S. § 6203-F(2)(B) (emphasis added).

[¶28]  H.A.T. asserts that the property at issue is residential, but the contract between H.A.T. and Greenleaf, as stated in the promissory note signed by O'Donnell, was for property purchased "only for business purposes, and not for personal, family or household purposes."  The undated consent judgment for forcible entry and detainer, signed by O'Donnell, along with the termination agreement, refers to the property in question as a "commercial property."  This language demonstrates that H.A.T. purchased and regarded the property as a commercial investment, not as a dwelling in which to reside.

[¶29]  We agree with the trial court's conclusion that 14 M.R.S. § 6203-F(2)(B) does not necessarily apply merely because a property includes residential rental units.  This statutory provision was meant to protect homeowners who obtain a mortgage on their residential property, not businesses or individuals pursuing million-dollar commercial real estate investments.  This conclusion is supported by the Legislature's history of attempting to protect homeowners in real estate agreements and in the event of a foreclosure.  *See* P.L. 2023, ch. 290, § 1 (effective Oct. 25, 2023) (codified at 32 M.R.S. § 13177-B (2025)) ("An Act to Protect Homeowners from Unfair

Agreements to Exclusively List Residential Real Estate for Sale"); P.L. 2009, ch. 402, §§ 10-14 (emergency, effective June 15, 2009) (codified and subsequently amended at 14 M.R.S. § 6111(1), (1-A), (3-A), (3-B), (4-A) (2025)) ("An Act To Preserve Home Ownership and Stabilize the Economy by Preventing Unnecessary Foreclosures").

[¶30]  Section 6203-F was clearly intended to protect homeowners of residential property from foreclosure without the opportunity to cure the default.  Preventing the unnecessary loss of a mortgagor's home is a significant and legitimate public purpose.  *See Sinclair v. Sinclair*, 654 A.2d 438, 440 (Me. 1995).   This policy interest does not extend to protecting savvy commercial real estate investors who own a property that happens to be used for residential purposes.

[¶31]  As a result, 14 M.R.S. § 6203-F(2)(B) did not require Greenleaf to give H.A.T. written notice of its right to cure the default.

The entry is:

Judgment affirmed.

James F. Cloutier, Esq. (orally), Cloutier, Conley & Duffett, P.A., Portland, for appellant H.A.T., LLC

Kurt E. Olafsen, Esq., and Meredith C. Eilers, Esq. (orally), Olafsen & Eilers. LLC, Portland, for appellee Greenleaf Apartments, LLC.

Russell B. Pierce, Jr., Esq. (orally), Norman, Hanson, & DeTroy, LLC., Portland, for appellee Murray, Plumb & Murray, P.A.

Business and Consumer Docket docket number CV-2020-24
For Clerk Reference Only